The Law Offices Of

# Joseph A. Bondy

Joseph A. Bondy

148 East 78th Street
New York NY 10075
Tel 212.219.3572
Fax 212.219.8456

josephbondy@mac.com

November 4, 2016

Hon. Katherine B. Forrest
United States District Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, N.Y. 10007

      Re: *United States v. Kordell Nesbitt, 16-cr-447-06 (KBF)*

Dear Judge Forrest:

      On November 18, 2016, the Court will sentence Kordell Nesbitt for conspiring to commit credit card fraud, in violation of 18 U.S.C. 1349 and 1343. It is respectfully submitted that a below-Guidelines sentence to probation with appropriate terms and conditions is sufficient to achieve the aims of 18 U.S.C. § 3553(a).

      <u>Advisory Sentencing Guidelines</u>

      Mr. Nesbitt's total adjusted offense level under the advisory Sentencing Guidelines is 10. His criminal history category is "II." The advisory range of imprisonment is 8-14 months. This calculation, although accurate, is higher than the total adjusted offense level of 7 and 2-8 month advisory Guidelines range contemplated by the parties in the plea agreement. Notwithstanding this higher calculation, the Government has indicated that it stands by the original plea agreement.

      <u>The Offense Conduct</u>

      While on supervised release for a federal conviction involving approximately five pounds of marijuana, Mr. Nesbitt was working as a barber at a Harlem barbershop. After cutting a client's hair on several occasions, the client learned that Mr. Nesbitt was having financial difficulties and offered him a means to make money with fraudulent credit cards.

On August 31, 2015, Mr. Nesbitt travelled to Kingston, New York, in an attempt to buy gift cards with several fraudulent credit cards. He was transported there by individuals who supplied him with the credit cards and instructed him on how to attempt to make the purchases, while they waited outside in a vehicle. Failing at several locations, Mr. Nesbitt ultimately succeeded in purchasing one $500.00 gift card from a United States Post Office. As he left the location, he was arrested by local police. Mr. Nesbitt was released after spending five days in jail, and on December 17, 2015, he pled guilty to the misdemeanor of possession of a forged instrument in the third degree and received a time-served sentence.

Because Mr. Nesbitt was still on supervised release for his marijuana offense, in March 2016, the probation office submitted a noncompliance report to the Honorable Jesse M. Furman, recommending that no action be taken. Judge Furman requested that the probation officer submit a request for a summons. On July 8, 2016, the case was transferred to the Court.

On April 26, 2016, Mr. Nesbitt was arrested in the instant case, and charged with this same behavior as part of a larger credit card fraud conspiracy. The overarching conspiracy's aim was to obtain large numbers of valuable gift cards, usually from United States Post Offices, using fraudulent credit cards that had been encoded with stolen bank account information.

On August 10, 2016, Mr. Nesbitt pled guilty to Count One of the indictment, and agreed to criminally forfeit $534.42. The plea agreement contemplated a total adjusted offense level of 7, a Criminal History Category of "II," and an advisory sentencing range of 2 to 8 months of imprisonment. That level has been increased by the probation department, to an advisory range of 8-14 months.

Sentencing is scheduled for November 18, 2016.

Kordell Nesbitt's Personal History

Kordell Nesbitt was born in the Bronx on September 19, 1987. He is the only child of his mother and father. His mother, Gwendolyn Maxwell, a college enrollment counselor, currently lives in Arizona. His father, a building custodian, lives in the Bronx. Mr. Nesbitt has two half-siblings, brother Boise Bristol, who lives in Dallas, Texas, and sister Khaila Acevedo, who lives with their mother in Phoenix. Mr. Nesbitt also has two half-siblings on his father's side, Kurtis and Shaquan.

Growing up, Mr. Nesbitt lived with his mother and her parents. His father had no involvement in his childhood, but for one contact when he was 5 and another when he was 13. When Mr. Nesbitt turned 21, he saw his father again and they have since managed to remain in touch.

Despite his being raised without a father figure, Mr. Nesbitt relates that his childhood was "fabulous" and "awesome." He attended good schools, played sports, and has fond

memories of his annual family vacations. He had close-knit relationships with his mother, grandparents, and siblings.

Mr. Nesbitt attended high school in Pennsylvania, and upon graduating opened a family barber shop. Mr. Nesbitt always has prided himself on not merely cutting people's hair, but on making people feel good. He was known to give free haircuts to people going on job interviews, and children of modest means.

From 2009 to 2013, Mr. Nesbitt served as an immigration enforcement agent for Immigrations and Customs Enforcement (ICE). He resigned after being arrested in a 1.8 kilogram marijuana conspiracy case, for which he received, first, a sentence of intermittent confinement for 45 weekends, and then a six-month home detention sentence for testing positive for cannabinoids while in the half-way house. He lost his career and was publicly shamed.

Mr. Nesbitt has a nine-year-old son. Although the boy and his mother recently moved to North Carolina, Mr. Nesbitt voluntarily provides financial support and retains joint custody, seeing his son on all major holidays and during summer vacations.

Mr. Nesbitt has been in another long-term stable relationship for the past six years. He and his fiancee currently reside with Mr. Nesbitt's grandparents in the Bronx. She is a schoolteacher, and his grandparents are retired.

During the course of his release on pre-trial supervision, Mr. Nesbitt sought and obtained full-time employment as a commercial truck driver. He also assists his grandmother in providing daily care for his ailing grandfather, who has come to rely upon him for support.

Gwendolyn Maxwell has written poignantly to the Court about her son's attributes, and asks that he be afforded consideration:

> My name is Gwendolyn Maxwell and I am the devoted Mother of Kordell Nesbitt of whom I love and adore with every fiber of my soul.
>
> Kordell has always been an awesome, generous and compassionate individual. Even as a child growing up, he would always extend himself and help others. His personality and positive energy always drew people to him both young and old and to this day whenever I visit New York and walk into the building of which we all grew up in, the elderly would always tell me how well mannered and courteous Kordell is. If he's not holding a door to the elevator, he is assisting with groceries or carrying laundry to help take the burden off the elderly women and men in building.
>
> Unfortunately, his father's presence growing up was minimal and it hurts me to the core to see the staggering statistics on the bad decisions that young men tend to make who grew up without a dad in their life. There is no question

that I am extremely disheartened and saddened by the bad choices that my child has recently made. I also know him better than anyone and he is not the person that is depicted in some of the documents that I have read. The Kordell that I raised attended American Barber Institute at 16 years of age and obtained his Barbers License, then owned and operated our family Barber shop. It is there that Kordell truly made a significant difference in the community where he began to cut at least a few 'free' heads a week to people who had been down on their luck. From the gentleman looking for employment to feed his family, to the young man who had prom but could not afford a haircut.

[] is the light of all of our lives and we believe in the motto "It takes a village to raise a child". My son has been extremely instrumental in the well being and successful upbringing of his son. He has exposed his son to an abundant amount of activities such as: museums, Broadway plays, art galleries, apple picking, library readings, Chucky cheese, zoo and so much more. Kordell attended his son's parent-teacher meetings, sporting events, bible school plays, doctor's appointments etc.

They would sometimes even wear the same sneakers and outfit with a nice haircut and go enjoy a 'daddy/son' day together. He prays with him at night and make sure they eat dinner together at the table like we was raise to do. [] attended Kings Academy private school where Kordell and my mother paid monthly tuition, transported him back and forth to school, prepared his lunches, ironed his uniforms and helped with his homework. That is the definition of a Man, a Father and a Child of God.

I am proud to say that Kordell recently obtained his Class A CDL from 'Smith & Solomon Commercial Driver Training'. He was determined to shift his paradigm in order to shift his situation. Sometimes you have to change your zip code in order to change your life. New York is no longer healthy nor conducive for Kordell to excel and succeed and just like I accomplished and so many others, he needs a 'change'.

There are vast amounts of opportunities elsewhere, such as Arizona which is where I currently reside. I am fully established and he already has a home, a church and a truck driver position awaiting him. Our entire family is praying that he can apply for and be granted an approval for a transfer. A new atmosphere will create new opportunities which results in new beginnings and that is what we would like for him.

Judge Forrest, Kordell is not perfect, but he is not an animal and does not belong behind the prison bars where he could potentially be harmed, he is just not that kind of kid. Please believe me when I say that he has suffered deeply from the bad choices that he has recently made and is ashamed of how this has

affected our entire family and he has displayed sincere remorse. We have cried and prayed many nights together, sometimes crying so hard we literally could barely breathe.

Currently, my mother heavily relies on Kordell to assist with her severely sick husband. Kordell sometimes has to help to dress, bathe, feed and watch over his grandfather who falls frequently and Kordell has to pick him up. Little [] needs his dad in his life and I could not bear to think how that little boy would function if his dad were not around. His fiancé of 6 years would not be able to maintain financially and would have to find somewhere to live. So many people would be affected and I pray for God to watch over my child during this process and pray that you will extend some leniency in this matter.

(Exhibit A.)

Mr. Nesbitt's younger sister, Khalia Acevedo, has also written in detail about her big brother's amazing attributes:

Kordell K. Nesbitt is how he is identified by most but I know him as 'big brother'. My name is Khaila Acevedo and I am an 18 year old college student majoring in Accounting at Phoenix College and looking to transfer to Georgia State University next year. I also just started a brand new career at a major reputable insurance company and excited about excelling academically and professionally, not just for me but for my family. In my family, obtaining a college degree is not an option, it's mandatory. Both my mother and grandmothers are educators and they have always expected excellence from my brothers and me.

As my mom raised myself and my two brothers as a single parent, my brothers were the only positive male role models around me. Kordell and I are closer in age than my oldest brother, which ultimately created a connection and bond that is unbreakable. When my nephew [] was born and I had the chance to watch firsthand how a father is supposed to be with their child. I always knew if I ever were to marry, I want to spend the rest of my life with a man just like my brother. Someone that is determined, hardworking, generous, intelligent, funny and loving like Kordell. My brother holds an overabundance of qualities and I can go on and on and on. At an early age, I've watched my brother work at the barber shop for hours 7 days a week to provide for his family. Even now, he works not only one job, but two.

My nephew [] was accustomed to seeing his father everyday and spending time with him during the time Kordell had custody of him. Kordell attended church, sporting events, doctor's appointments, parents-teacher conferences, family vacations, chucky cheese, museums, art galleries to name a few. Unfortunately, my nephew is currently subjected to only seeing his dad on

holidays and breaks due to my brother agreeing with his mom to relocate to North Carolina to provide a better quality of life for []  Last year May of 2016 was my HS graduation and all I wanted was my brother to witness me walking across that stage and receive my diploma. That didn't happen, he wasn't able to come due to his circumstances.

Now I'm a freshman in college, and my only prayer is that my brother will be there throughout my college years to watch me flourish and become the successful young lady that my mother and grandmother has raised me to be. My elderly grandparents heavily rely on Kordell to help out at home. My grandpa falls down frequently due to his condition and my grandmother is barely able to lift him up. Kordell helps dress him and feed him and runs errands to keep the heavy weight off my grandma who by the way adores Kordell with every fiber of her being. She probably would not be able to make it without him and my grandpa will probably fall one day and die if there is no one there to help him.

Judge Forrest, I just want you to know that my brother is not a menace to society nor a "thug" figure that our society depicts and stereotypes of so many young men that look just like him.  He is an intelligent, well rounded, loving brother, father, boyfriend, son, and grandson who just made a couple of bad decisions, which we all are guilty of.  So yes, my brother is guilty of being human and acting like an idiot but he has so many roles to fulfill and he can only complete them if he is free to relocate to Arizona with me and my mom where he will have a home, job, church and a new beginning.

Prison is not where he belongs and he has suffered more than you could possibly know. He has cried many nights over the disappointment and shame brought upon the family.  He has asked God for forgiveness for the sins he has committed and I pray that you too will forgive him and give him leniency when you make your final decision.

(Exhibit A).

A number of Mr. Nesbitt's other family members and friends have written letters on his behalf, which are appended in full at Exhibit A. They each identify him as an excellent father, hard worker, and a person of faith.

Mr. Nesbitt was released the day of his arrest, and remains on pretrial supervision. He immediately accepted responsibility for his conduct, and was the first of the defendants charged to enter his plea, thereby conserving judicial and prosecutorial resources.

Mr. Nesbitt also obtained and maintains full-time employment as a commercial truck driver, and has additional growth opportunities within the industry. He continues to provide

financial and emotional support to his son, and physical assistance and emotional support to his grandparents, with whom he resides.

### Sentencing Guidelines and 18 U.SC. 3553(a)

In <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Supreme Court held the Sentencing Guidelines to be merely advisory. District Courts now must consider the Guidelines along with all of the other sentencing factors set out in 18 U.S.C. § 3553(a). <u>United States v. Crosby</u>, 397 F. 3d 103, 111 (2d Cir. 2005).

Title 18 U.S.C. 3553(a) instructs district courts to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph 2." <u>See also</u>, <u>Kimbrough v. United States</u>, 552 U.S. 85, 102 (2007). 18 U.S.C. § 3553(a)(2) states that these sentencing purposes are: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Section 3553(a) requires consideration of still other factors in imposing a sentence "not greater than necessary," including: (1) the nature and circumstances of the offense and history and characteristics of the offender; (2) the kinds of sentences available; (3) the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty for similar conduct; and (4) the need to provide restitution to any victims of the offense.

### Application

It is respectfully submitted that a sentence that is sufficient, but no greater than necessary to achieve the purposes of sentencing is one that does not involve incarceration. A term of probation with home confinement would allow Mr. Nesbitt to continue to work in his new job and help his grandfather at home, or to move to Arizona to reside with his mother and accept the job offer that he has waiting for him there.

Mr. Nesbitt has accepted full responsibility for his actions and is remorseful and ashamed. He is now gainfully employed, supporting himself and providing for his dependents. Unfortunately, he is also now a second felony offender, with a related state misdemeanor. Mr. Nesbitt will likely suffer the amplified collateral consequences of this status for years to come.

Mr. Nesbitt has been deterred, and has spent the past seven months engaged in improving his life notwithstanding the weight of his impending federal sentencing. He has had to face his family and ask for their support yet again, and to feel their disappointment in his grave failure of judgment. He stands before the Court humbled, and hopeful that it will afford him the opportunity to continue working gainfully every day and to build upon his successful efforts at rehabilitation this past year. There remains no need to deter him through

incarceration. See, e.g., United States v. Francis, 2013 U.S. Dist. LEXIS 138603, * 6 (E.D.N.Y. 2013)("General deterrence is satisfied by the felony conviction and its collateral consequences.")

Prison is not where a person such as Mr. Nesbitt is required to be placed. Strict supervision without incarceration will be more beneficial not only for his rehabilitation but also for the greater community. While under such supervision, the ties of his community and family will help integrate Mr. Nesbitt into greater respect for the law, thus enhancing the probability of a successful and law-abiding future, including being able to maintain current employment, pay taxes and otherwise contribute to society, at a fraction of the cost to taxpayers whose expenditures for incarceration are exponentially larger than for non-jail supervision.

A sentence of probation with sufficiently stringent conditions would constitute a sufficient punishment, increase the public's respect for our criminal justice system as not cruel and excessive, and best exemplify the principle that, "While protecting the public, the federal district judge's duty is to try to save as many of the people before the court as it can—one person at a time in accordance with the law." United States v. K, 2001 U.S. Dist. LEXIS 7071, *3 (JBW) (E.D.N.Y. 2001).

Conclusion

For the reasons set forth herein, it is respectfully submitted that Mr. Nesbitt can be allowed to continue working to support his son and to further his own rehabilitation, and does not need to be incarcerated to satisfy the statutory purposes of punishment. Thank you for consideration of this application.

Respectfully submitted,

_____/S/_____
Joseph A. Bondy
*Counsel to Kordell Nesbitt*

cc:     AUSA Michael Neff