

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

November 11, 2016

**BY ECF**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street
New York, New York 10007

> Re:   United States v. Kordell Nesbitt,
>        16 Cr. 447 (KBF)
>        13 Cr. 629 (KBF)

Dear Judge Forrest:

The Government respectfully submits this letter in advance of sentencing in this matter, currently scheduled for November 18, 2016 at 11:00 a.m.  Pursuant to the Court's order, the upcoming sentencing is for both the defendant's 2016 case and his violation of the supervised release conditions of his 2013 case in this District.  (Dkt. 45).  For the reasons set forth below, the Government seeks a below-Guidelines sentence on the defendant's 2016 case (*i.e.*, less than 8 months' imprisonment), to be served consecutively to a Guidelines sentence on his 2013 violation (*i.e.*, within the Guidelines range of 4 to 10 months' imprisonment), and respectfully submits that such sentences would be sufficient but not greater than necessary here.

## A.  Factual Background

On January 8, 2014, the defendant pleaded guilty to conspiring to distribute 1.8 kilograms of marijuana, in violation of 21 U.S.C. §§ 846 and 841(b)(1)(C).  (United States Probation Office's Violation Report, dated October 14, 2016 ("Violation Report"), at 2).  At the time that he committed this crime, the defendant was employed as an Immigration Enforcement Agent with the Department of Homeland Security, Immigration and Customs Enforcement.  (*Id.*).  At sentencing in May 2014, the Court initially expressed the intention to sentence the defendant to three months' imprisonment, but then "agreed to allow the [] defendant to serve his three-month sentence of imprisonment on weekends."  (13 Cr. 629, Dkt. 57).  When it later emerged that intermittent confinement in a prison setting was not currently available, the Court sentenced the defendant to time served and three years' supervised release, with a special condition of supervised release that he serve 45 weekends in a halfway house.  (*Id.*).

In July 2014, the United States Probation Office ("Probation") filed specifications against the defendant.  On September 3, 2014, the defendant admitted one specification—frequenting a

Hon. Katherine B. Forrest                                                                                           Page 2
November 11, 2016

location where marijuana was illegally being used—and was sentenced to six months of home detention with electronic monitoring, along with a new three-year term of supervised release. (Violation Report, 2).

On August 31, 2015, the defendant committed the misconduct that led to both his 2016 case and his current round of violations on his 2013 case. On that date, he traveled with a co-conspirator to at least three U.S. Post Offices in New York, where he attempted to buy $500 gift cards with fraudulent credit cards. (United States Probation Office's final Presentence Investigation Report, dated November 1, 2016 ("PSR"), ¶ 72). At the post office in Saugerties, New York, the defendant attempted gift card transactions with multiple fraudulent credit cards, but the transactions repeatedly did not go through. (*Id.* ¶ 65). At the post office in Glasco, New York, the defendant sought to buy a gift card but that post office did not sell them. (*Cf. id.* ¶ 72). Finally, at a post office in Kingston, New York, the defendant succeeded in buying one $500 gift card with a fraudulent credit card. (*Id.* ¶ 67). He was promptly arrested in possession of the $500 gift card and three fraudulent credit cards. (*Id.* ¶ 68). In a post-arrest statement, the defendant admitted that he was driven, and given the fraudulent credit cards by, co-defendant Eric Robinson. (*Id.*). The credit cards were in the defendant's name but were encoded with stolen bank account information of others; at least one fraudulent credit card was encoded with foreign bank account information, leading to the closure of that account. (*Id.* ¶ 70). The defendant did not have permission to use these bank accounts. (*Id.*).

The defendant's misconduct is a small piece of a far larger conspiracy. From at least May through August 2015, more than six individuals engaged in a scheme in which they purchased American Express, Visa, and/or MasterCard gift cards—often worth $500 each—using fraudulent credit cards. (*Id.* ¶ 11). The co-conspirators obtained scores of $500 gift cards, usually from U.S. post offices, in New York, Connecticut, and Pennsylvania. (*Id.* ¶ 12). In total, the defendants defrauded others, or attempted to defraud others, out of more than $150,000. (*Id.*). The co-conspirators spent some of their ill-gotten gains on purchases at Saks Fifth Avenue and at Apple stores.[1] (*Id.*).

On April 25, 2016, the defendant was charged in a two-count Complaint with conspiracy to commit wire fraud and wire fraud, in violation of 18 U.S.C. §§ 1349 and 1343. (16 Cr. 447, Dkt. 1). On August 10, 2016, the defendant pled guilty to Count One of a two-count Indictment with these same two charges. (*Id.* Dkt. 42). In the plea agreement, the parties stipulated to a Guidelines range of 2 to 8 months' imprisonment (the "Stipulated Guidelines Range"). (*Id.*; PSR ¶ 6).

On October 24, 2016, Probation filed a Violation Report with two specifications, which relate to the defendant's misconduct that underlies his 2016 case. The defendant's 2013 case was reassigned to Your Honor in order to facilitate efficient handling of these two related cases.

---

[1] The Government presents the information in this paragraph as context. The Government does not contend—or believe—that this defendant knew the full geographic or financial scope of this conspiracy.

Hon. Katherine B. Forrest                                                                    Page 3
November 11, 2016

## B. Presentence Investigation Report and Violation Report

In the final PSR (for the 2016 case), Probation calculated a Guidelines range that is higher than the parties' calculation in the plea agreement. Probation's range is 8 to 14 months' imprisonment (the "Probation Guidelines Range"). (PSR p. 27). The Government agrees with the defense that Probation's calculation is correct.[2] (16 Cr. 447, Dkt. 51 ("Def. Mem."), 1). However, the Government stands by its plea agreement. Probation seeks a sentence of 8 months' imprisonment and the defense seeks a sentence of probation. (PSR p. 27–28; Def. Mem. 1).

Probation's Violation Report (in connection with the 2013 case) notes that the Guidelines range for Specification 1 is 3 to 9 months' imprisonment, and that the Guidelines range for Specification 2 is 4 to 10 months' imprisonment. (Violation Report 4). Probation seeks a sentence of 10 months' imprisonment.[3] (*Id.* at 5).

## C. Discussion

### 1. Applicable Law

As to the 2016 case, the Court is well aware that the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States* v. *Booker*, 543 U.S. 220 (2005), and *United States* v. *Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall* v. *United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

As to the violation of supervised release, when imposing a sentence, the Court must consider the factors listed in 18 U.S.C. § 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7), including the nature and circumstances of the offense, the history and characteristics of the defendant, the need for the sentence imposed, and the applicable Guidelines range. *See* 18 U.S.C. §§ 3553(a); 3583(e)(3). In assessing the appropriate sentence, "the primary goal of a revocation sentence" is "to sanction the violator for failing to abide by the conditions of the court-ordered supervision," in order to account for the breach of trust inherent in failing to follow the court-imposed conditions of supervised release. U.S.S.G. Ch. 7, Pt. A(3)(b). Thus, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, *to a limited degree,* the seriousness of the underlying violation and the criminal history of the violator." *Id.*; *see also United States* v. *Sindima*, 488 F.3d 81, 86 (2d Cir. 2007). Finally, the Guidelines recommend that a sentence imposed upon the revocation of supervised release run

---

[2] This error was a mistake by the Government.

[3] The November 18, 2016 conference will be the first appearance on the violation of supervised release proceeding.

Hon. Katherine B. Forrest                                                                                    Page 4
November 11, 2016

"consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation." U.S.S.G. § 7B1.3(f) (policy statement).

### 2. A Guidelines Sentence Is Appropriate for the Violation in the 2013 Case, While A Below-Guidelines Sentence is Warranted for the 2016 Case

The sentencing factors most applicable here are the breach of the Court's trust, the nature and characteristics of the offense, and the history of the defendant, including his recidivism. These factors counsel in favor of a Guidelines sentence on the 2013 violation, and a below-Guidelines sentence on the 2016 case, with the two sentences running consecutively.

The defendant's violation of his supervised release conditions represents a serious breach of the Court's trust for several reasons. First, the defendant failed to follow the most basic term of supervised release: to not commit additional crimes. Second, the crime he committed is a serious one—using the financial information of others, without authorization, in order to enrich himself at his victim's cost. Schemes of this kind, in which defendants get potentially large sums of money by stealing financial information of others and making false representations, represent a significant problem and expense for financial institutions and the consumers they serve. (Although the loss the defendant personally caused was relatively modest, the loss caused by the scheme was more than $100,000.)

Third, a Guidelines sentence on the 2013 violation is warranted for deterrence purposes. The defendant went to several different post offices in his attempt to obtain gift cards. It should have been a major warning sign to the defendant when he failed in his attempts at the first two post offices, partly because his fraudulent credit cards were rejected. Those failures presented opportunities for the defendant to stop his attempted criminal activity, but he declined to do so. Instead, he went to a third post office, succeeded in getting one $500 gift card, and was promptly arrested. A Guidelines sentence is therefore necessary to afford adequate deterrence to the defendant and others similarly situated. 18 U.S.C. § 3553(a)(2)(B). It is clear from the defendant's conduct that neither his previous federal conviction nor his prior violation of supervised release deterred him from committing an additional crime.

Finally, the defendant has been fortunate twice to receive non-incarcerative sentences, both at his original sentencing (a halfway house) and at his first violation of supervised release (home detention). Unfortunately, though, the defendant continues to commit crime. As a result, a period of incarceration is warranted here. *Cf., e.g.*, *United States* v. *Verkhoglyad*, 516 F.3d 122, 133 (2d Cir. 2008) (holding that the District Court appropriately considered past "sentencing breaks" received by the defendant in determining an appropriate sentence for the defendant's violation of the terms of his supervised release).

While the defendant's recidivist behavior is particularly troubling in the context of his violation of supervised release, it is also the case that his conduct with respect to the substantive offense was brief, comparatively minor, and resulted in a loss amount far lower than the vast majority of defendants who appear before Your Honor for sentencing—and far lower than each of the other five defendants charged in this conspiracy. The Government also recognizes that the

Case 1:16-cr-00447-KBF   Document 52   Filed 11/11/16   Page 5 of 5

mitigating circumstances cited in the defense submission are appropriate factors for the Court's consideration.  Had the defendant not been subject to supervised release when he committed these crimes, a non-incarcerative sentence may have been appropriate.  But he was.  Against this backdrop, the Government respectfully submits that a Guidelines sentence on the violation, to be followed by a below-Guidelines sentence on the substantive offense, appropriately balances the 3553(a) factors and would be sufficient but not greater than necessary to serve the purposes of sentencing.

**D.  Conclusion**

       For the reasons set forth above, the Government respectfully submits that the sentence that is fair and appropriate in this case is a below-Guidelines sentence on the defendant's 2016 case (*i.e.*, less than 8 months' imprisonment), to be served consecutively to a Guidelines sentence on his 2013 violation (*i.e.*, 4 to 10 months' imprisonment).

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: _____
Michael D. Neff / Matthew Laroche
Assistant United States Attorneys
(212) 637-2107 / -2420

cc:  Joseph A. Bondy, Esq. (via ECF)
    United States Probation Officer Robert Walsh (by email)